# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **THOMAS NIGHTINGALE,** ) | |
| ) | |
| *Plaintiff*, ) | **Case No.** _____ |
| ) | |
| v. ) | |
| ) | |
| **AFS LOGISTICS, LLC,** ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Thomas Nightingale (referred to interchangeably as "Plaintiff," "Tom," or "Nightingale") files this lawsuit against Defendant AFS Logistics, LLC (referred to interchangeably as "Defendant" or "AFS"), and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff specifically alleges the citizenship of the parties to this lawsuit in Paragraphs 4 and 5 below.

2. This Court has personal jurisdiction over Defendant, as Defendant has conducted and continues to conduct substantial business in the State of

Georgia and this District, including maintaining offices and employees in Atlanta, Georgia.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant is subject to personal jurisdiction in this District. Specifically, Defendant maintains an office in Atlanta, Georgia, and required Plaintiff to work out of that Atlanta office for the duration of Plaintiff's employment with Defendant.[1]

## II. **PARTIES**

4. Plaintiff Tom Nightingale is a natural person and citizen of the State of Massachusetts. While working for Defendant, Tom maintained a residence in Atlanta, Georgia. Pursuant to Plaintiff's Employment Agreement with Defendant, Tom primarily worked for AFS at AFS's office in Atlanta, Georgia.

5. Defendant AFS Logistics, LLC is a Louisiana limited liability company. AFS's sole member is Brian J. Barker, a natural person and citizen of

---

[1] The Employment Agreement required Plaintiff to work in Defendant's office in Atlanta, Georgia. Plaintiff worked from Monday morning until Friday evening each week in AFS's office in Atlanta, Georgia during the bulk of his employment for AFS.

2

Utah.[2] AFS is therefore a citizen of Utah for diversity jurisdiction purposes.[3] AFS may be served with process through its registered agent, Brian J. Barker, at 670 Emberwood Drive, Shreveport, LA 71106, or wherever else he may be found.

### III.  FACTUAL ALLEGATIONS

6. AFS is a leading provider of logistics and transportation solutions to various industries.

7. Tom is an accomplished leader in the logistics and transportations industry, with a proven track record of working with high-growth transportation and logistics companies. Tom has spent his entire career in transportation and logistics. Tom has developed a stellar reputation and is well-known and respected throughout the transportation and logistics industry. Well-known trade and industry publications and global supply chain and logistics industry events frequently seek his expertise as a speaker and a writer.

8. In 2020, AFS offered Tom the position of CEO and Tom brought his considerable experience, skills, and leadership to AFS pursuant to the terms of the February 24, 2020 employment agreement (the "Employment Agreement"), a copy of which is attached hereto as Exhibit "A" and incorporated herein.

---

[2] *See* Pl.'s Original Complaint ¶¶ 9–10, ECF No. 1, *AFS Logistics, LLC v. Tetria Global Logistics, LLC et al.*, Northern District of Texas Civil Action No. 4:21-CV-01086-O; *see also* Pl.'s Declaration of Scott Matthews, ECF No. 1-1, *AFS Logistics, L.L.C. v. Christopher R.W. Cochran et al.*, Middle District of Tennessee Civil Action No. 3:16-CV-03139.

[3] *See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011).

9. Specifically: On or about February 23, 2020, Defendant offered Plaintiff employment as its Chief Executive Officer. Plaintiff accepted Defendant's offer on February 24, 2020 and commenced his employment as CEO on or about April 2, 2020 pursuant to the terms and conditions of the Employment Agreement. The Employment Agreement set forth the material terms and conditions of Plaintiff's employment including, among other things, his title, job responsibilities, compensation package, benefits, incentives, equity position and vesting schedule, and severance entitlements.

10. Under the Employment Agreement, Tom was entitled to participate in an "Equity Participation Plan" or, in the absence of a specific plan that was offered to him and accepted by him,[4] he was granted an option equivalent to 3% of the BEV as established by KPMG in their report dated December 3, 2019, at an exercise price of $1,680,000. No equity participation plan was ever established for Plaintiff. Instead, his 3% equity options vested per the Employment Agreement's terms on April 2, 2023, the date upon which Plaintiff completed his third year of employment. Pursuant to the clear terms of the Employment Agreement, Tom was provided a ten-year option exercise period

---

[4] A plan was created only for Class B non-voting shares, but Tom was never tendered an offer for the Class B shares and was never part of the calculations for that plan. This is because Tom was granted a voting class of shares, as affirmed by the sole member of AFS (Brian Barker) in early 2023, just a few months before Tom's third anniversary, when he reminded Tom that he "will be an owner of the company soon."

4

from the date of grant (or until April 2, 2033). AFS refuses to honor this material term of the Employment Agreement (which it drafted itself) and refuses to provide Tom with his equity options.

11. Tom's employment was terminated without notice and without cause on August 12, 2024. The Employment Agreement clearly provides that, in the event Tom's employment was terminated without Cause (as that term is defined in Section 9 of the Employment Agreement), he was entitled to receive 12 months' base salary to be paid on each of AFS's regular pay periods for the 12-month period following his date of termination. AFS has not paid this amount (or started paying this amount) and refuses to do so.

12. Tom is owed his accrued but unpaid base salary and his vested 3% equity option grant.

13. On or about August 22, 2024, Plaintiff, through his counsel, sent a formal demand letter to Defendant (the "Demand Letter"), a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein by reference. In the Demand Letter, Tom asks AFS to comply with the clear terms of the Employment Agreement, but AFS refuses to do so.

14. Plaintiff was required to hire the undersigned lawyers to pursue this lawsuit so that he could obtain the benefits rightfully owed to him under the Employment Agreement.

## IV. CAUSE OF ACTION
### Count 1: Breach of Contract

15. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

16. Plaintiff and Defendant entered into a valid and enforceable contract, namely the Employment Agreement, which governed the terms and conditions of Plaintiff's employment, compensation, benefits, and severance.

17. Plaintiff performed his obligations under the Employment Agreement.

18. Defendant breached the Employment Agreement by failing and refusing to pay Plaintiff 12 months of his base salary after terminating his employment without cause and his vested 3% equity award. Indeed, after terminating Plaintiff's employment without cause, Defendant – instead of honoring the terms of the Employment Agreement – instead has tried to manufacture a reason – post-termination – to assign cause to the termination when there was no cause (and has been unable to do so).

19. As a direct and proximate result of Defendant's breach of the Employment Agreement, Plaintiff has suffered and continues to suffer damages, in an amount to be determined at trial, but in excess of $75,000, exclusive of interest and costs.

20. Defendant's actions constitutes a failure to exercise their duty to act in good faith in performance of the contract.

21. Plaintiff is entitled to recover from Defendant all damages caused by Defendant's breach of the Employment Agreement, as well as his reasonable attorneys' fees, expenses, and court costs incurred in enforcing his rights under the Employment Agreement.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award him the following relief:

a. Compensatory and consequential damages in an amount to be determined at trial, but in excess of $75,000, exclusive of interest and costs;

b. Specific performance of the terms of the Employment Agreement;

c. Prejudgment and post-judgment interest at the maximum rates allowed by law;

d. Attorneys' fees, expenses, and costs incurred in an amount to be determined at trial; and

e. Such other and further relief as this Court deems just and proper.

## V. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

This 11th day of October, 2024.

[*Signature on the following page*]

Respectfully submitted,

**BERMAN FINK VAN HORN P.C.**

_/s/ Lea C. Dearing_
Lea C. Dearing
Georgia Bar No. 922882
E-mail: ldearing@bfvlaw.com
3475 Piedmont Road, N.E.
Suite 1640
Atlanta, Georgia 30305
Telephone: (404) 261-7711

Mary Goodrich Nix (Pro Hac Vice forthcoming)
Texas Bar No. 24002694
mnix@lynnllp.com
Campbell Sode (Pro Hac Vice forthcoming)
State Bar No. 24134507
csode@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839